IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HOTEL SERVICES COMPANY, LLC, a Nevada limited liability company, and DRURY HOTELS COMPANY, LLC, a Nevada limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> TRAVELPASS GROUP, INC., a Delaware corporation <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiffs Hotel Services Company, LLC and Drury Hotels Company, LLC (collectively "Plaintiffs" or "Drury"), and for their Complaint against Defendant TravelPASS Group, Inc. ("TravelPASS" or "Defendant"), respectfully state as follows:

## NATURE OF ACTION

1.     This is an action for trademark infringement, false designation of origin, false advertising, unfair competition, and trademark dilution, in violation of 15 U.S.C. §§ 1114 and 1125; trademark infringement and unfair competition under Missouri common law; and trademark dilution under the laws of the State of Missouri (Mo. Rev. Stat. § 417.061).  Drury seeks, among other remedies, permanent injunctive relief, damages, and such other relief as the Court deems just and equitable under the circumstances.

2.     Defendant operates a business which markets and sells third-party hotel rooms and services under and in connection with third-party trademarks, service marks, trade names,

1

and copyright protected works, including Drury's, all without the consent of Drury (and the other hotel companies).

3.      In so doing, Defendant not only misleads the relevant public regarding the source of its services, it also misrepresents the availability of Drury's inventory, adds additional (and unnecessary) costs for consumers, which costs misleadingly appear to be charged by Drury, infringes the intellectual property of Drury, and harms Drury's extremely valuable goodwill. Defendant does this both through its websites—which are designed to deceive consumers into believing there is an affiliation between Defendant and Drury (which there is not)—and through its call centers, which do the same.  Moreover, Defendant offers almost nothing of value to consumers, but instead operates almost exclusively to extract from consumers unnecessary and exorbitant fees for its own benefit.

4.      Defendant's unlawful practices are well-documented, including without limitation by a recent Wall Street Journal article that specifically mentions Defendant and its Reservation Counter affiliate as engaging in these unlawful practices (*see* **Exhibit A**, Dawn Gilbertson, *How to Avoid the Copycat Hotel Websites That Are Ripping You Off*, Wall Street Journal (Apr. 3, 2025, 2:48 PM), https://www.wsj.com/lifestyle/travel/how-to-avoid-the-copycat-hotel-websites-that-are-ripping-you-off-7d14d903), and have been the subject of at least one major regulatory enforcement action by the Federal Trade Commission (*see* **Exhibit B**, Stipulated Order for Permanent Injunction and Judgment, *Federal Trade Commission v. Reservation Counter et al*, Docket No. 2:17-cv-01304, ECF No. 5 (Dec. 26, 2017)).

5.      Drury filed an earlier lawsuit against Defendant for the same conduct: to resolve that suit, Defendant agreed to stop certain practices that infringed upon Drury's rights.

Notwithstanding the prior lawsuit and Defendant's agreements relating thereto, Drury learned that Defendant has resumed its unlawful and harmful practices.

## THE PARTIES

6.      Plaintiff Hotel Services Company, LLC ("HSC") is a limited liability company organized and existing under the laws of the State of Nevada, having a principal place of business at 13075 Manchester Rd., Suite 100, St. Louis, Missouri 63131.  HSC is composed of a single member, Drury Hotels Company, LLC, a Nevada limited liability company, having a principal place of business at 13075 Manchester Rd., Suite 100, St. Louis, Missouri 63131. Information regarding the membership and citizenship of Drury Hotels Company, LLC is provided below.

7.      Plaintiff Drury Hotels Company, LLC ("DHC") is a limited liability company organized and existing under the laws of the State of Nevada, having a principal place of business at 13075 Manchester Rd., Suite 100, St. Louis, Missouri 63131. DHC is composed of two members: (a) DDC Hotels, Inc., a Missouri corporation with a principal place of business at 13075 Manchester Rd., Suite 200, St. Louis, Missouri 63131; and (b) DSW Industries, Inc., a Nevada corporation with a principal place of business at 101 S. Farrar Drive, Cape Girardeau, Missouri 63701.

8.      Defendant TravelPASS Group, Inc. is, on information and belief, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 4700 West Daybreak Parkway, Suite 100N, South Jordan, Utah, 84009.

9.      Defendant maintains websites targeted to and available throughout the United States including, but not limited to, in this judicial district. Among the websites maintained by Defendant include, at least, the following domains: www.reservationdesk.com;

3

www.reservationcounter.com; and www.nitecrawler.com (the "Infringing Websites"). The Infringing Websites comprise, *inter alia,* advertising, marketing, and promotions, that encourage and permit consumers and entities to search for hotels, review alleged facts and details regarding hotels, assess alleged hotel prices, perform competitive hotel and pricing evaluations, and book hotel reservations on and via the Infringing Websites.

10.    Defendant has, on information and belief, intentionally marketed and directed its Infringing Websites and the Infringing Websites' content and services at people and businesses residing within this judicial district including, but not limited to, by communicating, marketing, directing, targeting, providing, and offering, as well as selling, information and services via its Infringing Websites regarding businesses and hotel properties located in this judicial district, in and to potential consumers, consumers, people, and businesses, in this judicial district.

## JURISDICTION AND VENUE

11.    This Court has original subject matter jurisdiction over Drury's claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1116 and 1121. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and the amount in controversy exceeds $75,000.

12.    This Court has personal jurisdiction over this dispute pursuant to, *inter alia,* 15 U.S.C. §§ 1116, 1117, 1121 & 1125.  On information and belief, Defendant is doing business in this judicial district, has wrongfully used and is continuing to wrongfully use, a number of Drury's trademarks and/or confusingly similar variations thereof including, for example, among others, U.S. Reg. Nos. 1,874,354; 1,092,983; 1,463,125; 1,772,627; 2,185,078; 2,091,304; 2,456,300; 1,580,727; 5,595,868; and 1,719,635 (individually and collectively, the "DRURY®

4

Marks") in this judicial district and elsewhere, has wrongfully diluted Drury's trademarks in this judicial district and elsewhere, and has committed unfair acts in this judicial district and elsewhere against Drury.

13.    Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391 because a substantial portion of the events giving rise to this action, on information and belief, occurred and are occurring in this judicial district, a substantial part of the property that is the subject of the action is situated in this judicial district, and Defendant is subject to personal jurisdiction in this judicial district.  On information and belief, Defendant has wrongfully used, infringed, diluted, and upon information and belief, continues to wrongfully use, infringe, and dilute Drury's valuable trademarks in this judicial district and, further, Defendant has committed unfair competition against Drury and, upon information and belief, is conducting and doing business in this division of this judicial district.

<u>FACTS COMMON TO ALL COUNTS</u>

<u>Plaintiffs Hotel Services Company, LLC and Drury Hotels Company, LLC</u>

14.    Drury's predecessors in interest and related companies founded and began developing the DRURY® family of brands of motels, hotels, and related goods and services, more than a half century ago.  Since the inception of the DRURY® brand of motels, hotels, and related goods and services, the DRURY® family of marks has grown to become extremely well-known and famous through the United States for such goods and services.  The DRURY® family of brands of motels, hotels, and related good and services, are marketed to consumers and companies throughout the United States and may be found at over 150 locations in 25 states across the United States, including, but not limited to, in this judicial district.

5

15.    Beginning at least as early as April 1973, Drury developed and adopted a number of trademarks and brands for use in connection with its high-quality and well-known motels, hotels, and related goods and services, including, among others, the DRURY INN® trademark.

16.    Throughout the 1980's and 1990's, Drury adopted and began using other variations of its DRURY® Marks, including, for example, D® (Stylized) (reproduced below, starting at least as early as May 5, 1983); DRURY® (starting at least as early as January 1986); PEAR TREE INN® (starting at least as early as April 14, 1992); DRURY SUITES® (starting at least as early as July 1, 1992); DRURY INN & SUITES® (starting at least as early as August 15, 1995); DRURY HOTELS® (starting at least as early as January 1997); and DRURY PLAZA HOTEL® (starting at least as early as September 1, 1999).



17.    Starting at least as early as September 26, 2017, Drury adopted and began using even more variations of its DRURY® Marks, including, without limitation, D® (Stylized) (reproduced below).



18.    Drury owns all right, title, and interest in, to, and under, the DRURY® Marks for use on and in connection with its motel, hotel, and related goods and services, which are

advertised, marketed, distributed, offered for sale, and sold in interstate commerce through the United States, by, through, and/or on behalf of Drury.

19.     To further protect its extremely valuable DRURY® Marks, and put others on further notice of its ownership and rights in, to, and under its DRURY® Marks, Drury has acquired a number of U.S. federal trademark registrations for its DRURY® Marks, including, without limitation:

- DRURY® (U.S. Reg. No. 1,874,354) for "*motel services*" in International Class 42;

- DRURY INN® (U.S. Reg. No. 1,092,983) for "*motel services*" in International Class 42;

- DRURY INN® (U.S. Reg. No. 1,463,125) for "*motel services*" in International Class 42;

- DRURY SUITES® (U.S. Reg. No. 1,772,627) for "*motel services*" in International Class 42;

- DRURY HOTELS® (U.S. Reg. No. 2,185,078) for "*motel services*" in International Class 42;

- DRURY INN & SUITES® (U.S. Reg. No. 2,091,304) for "*motel services*" in International Class 42;

- DRURY PLAZA HOTEL® (U.S. Reg. No. 2,456,300) for "*hotel services*" in International Class 42;

- 𝑫 ® (U.S. Reg. No. 1,580,727) for "*motel services*" in International Class 42;

- 𝑫 ® (U.S. Reg. No. 5,595,868) for "*Hotel and motel services; hotel and motel services featuring frequent guest reward program services; Hotel services featuring an incentive reward program with added features which allow participants to earn free or discounted lodging, hotel services, travel-related benefits and amenities, and acquire points redeemable for gift cards, charitable contributions, and other consumer products and services*" in International Class 43; and

7

- PEAR TREE INN® (U.S. Reg. No. 1,719,635) for "*motel services*" in International Class 42.

20.    Each of the identified DRURY® Marks have attained "incontestable" status under Section 1 of the Lanham Act, 15 U.S.C. § 1065.  Drury's ownership of incontestable U.S. registrations for its DRURY® Marks is "conclusive evidence of the validity of the … mark …, of [Drury's] ownership of the mark, and of [Drury's] exclusive right to use the registered mark in commerce."  15 U.S.C. § 1115(b).

21.    True and accurate copies of the U.S. Registration Certificates for each of the above U.S. federal trademark registrations for the DRURY® Marks are collectively attached hereto as **Exhibit C**.

22.    Drury has continuously used its DRURY® Marks, as noted above, in U.S. interstate commerce, nationwide, and elsewhere, on and in connection with its motels, hotels, and related goods and services, some for more than fifty years, since at least as early as April 2, 1973.

23.    For over five decades, Drury has expended, and continues to expend, a substantial amount of resources, money, time, and effort promoting, marketing, advertising, and building consumer recognition and goodwill in its extremely valuable DRURY® Marks.  There can be no legitimate dispute that the DRURY® Marks are extremely valuable and have acquired substantial secondary meaning in the marketplace, nor that Drury has exclusive common law rights in, to, and under its DRURY® Marks throughout the United States.

24.    Drury offers and provides the relevant market, consumers, and public with a variety of services and associated goods, including, for example, hotel and motel booking services, accommodations, restaurant services, concierge services, and other services and related goods offered by and through hotels and motels.

25. Drury operates and maintains a website available at www.druryhotels.com; and Drury has expended a significant amount of money and resources through extensively advertising, promoting, and marketing its motels, hotels, and related services and goods under and in connection with the DRURY® Marks in numerous media across the United States, including, but not limited to, in magazines, newspapers, other print and online publications, billboards, trade magazines, social networking sites, and other well-known advertising methods.

26. Drury also maintains active social media accounts, where it posts marketing and advertising materials promoting its DRURY® Marks. These accounts include, by way of example, Facebook (*e.g.*, facebook.com/druryhotels), Instagram (*e.g.*, instagram.com/druryhotels), and Twitter (*e.g.*, twitter.com/druryhotels), among others.

27. Drury's well-known DRURY® Marks are inherently distinctive and have acquired substantial secondary meaning and goodwill among the relevant public as a result of the continuous and extensive use and promotion of DRURY® Marks over a matter of more than five decades, and in connection with, for example, Drury's motels, hotels, and related goods and services.

28. Through Drury's decades-long extensive and continuous use of the DRURY® Marks, the DRURY® Marks have become extremely well-known, have become famous, acquired substantial secondary meaning, been recognized and acknowledged by the USPTO as having attained "incontestable" status under Section 1 of the Lanham Act, 15 U.S.C. § 1065, and have gained an enormous amount of goodwill with the relevant public, associated with hotel and motel goods and services.

29. The DRURY® Marks have long been used, and continue to be used, by Drury to identify the source of origin of Drury's high-quality motels, hotels, and related goods and

services, and, further, to distinguish such high-quality goods and services from goods and services offered by its competitors and others.

30.     As a result of Drury's continuous and exclusive use of its DRURY® Marks, customers and consumers in the hotel market have come to strongly associate and recognize the DRURY® Marks as identifying a source of origin of Drury's high-quality motels, hotels, and related goods and services.

### Defendant TravelPASS Group

31.     Upon information and belief, Defendant TravelPASS was incorporated in 2006 as a technology company in the travel industry, acting as a full-service online and telephone-based travel agency ("OTA") through a number of affiliated entities and/or subsidiaries, including Reservation Desk, Reservation Counter, and Nite Crawler, among others.

32.     Defendant, including by and through its affiliates and/or subsidiaries, markets, advertises, promotes, offers for sale, and sells room reservations at third-party hotels and motels including, but not limited to, at Drury's DRURY® branded hotel and motel properties, through its Infringing Websites and through direct-to-consumer telephone advertisements and sales.

33.     Upon information and belief, Defendant obtains access to hotel and motel room inventory, including inventory at DRURY® brand hotel properties, primarily through affiliate network programs sponsored by the major OTAs – such as Expedia – and/or through the Global Distribution System ("GDS") a computerized network that connects traditional travel agents and OTAs with hotel and motel services providers.

34.     Defendant, upon information and belief, primarily advertises its hotel and motel bookings services through manipulation of search engine optimization ("SEO") and paid search ads, also known as sponsored links, in online search engine marketing, which results in

Defendant's online advertisements for its bookings services being listed first in search engine results, frequently above the authentic third-party hotels' own links for their booking services.

35.    By clicking on Defendant's links, consumers are directed to Defendant's Infringing Websites, and presented with webpages through which they can book and purchase hotel and motel room reservations online, including at DRURY® brand properties.

36.    Consumers can also purchase room reservations by calling the telephone number displayed on the Infringing Websites, which, upon information and belief, connects them with Defendant's call centers, where sales representatives directly advertise and sell room reservations at third-party hotels and motels, including at DRURY® brand properties.

37.    Defendant's advertisements, offers for sale, and sales of room reservations at hotel and motel properties have historically and continue to employ misleading, deceptive, and confusing use of trademarks, service marks, brands, and images owned by third-party hotels and motels, in a way that suggests Defendant is, itself, the hotel or motel and/or that suggests an affiliation, association, or other sponsorship by such hotels and motels.

38.    Further, in connection with Defendant's advertisements, offers for sale, and sales of room reservations, Defendant has historically and continues to provide materially false information regarding such hotel and motel properties, including, without limitation, regarding availability of room reservations, the prices, taxes, fees, and other surcharges exacted for the room reservations, and the source of such fees and other surcharges.

39.    Indeed, in 2017, the Federal Trade Commission filed a consumer fraud suit in the U.S. District Court for the District of Utah against Defendant TravelPASS (the "FTC Suit"), asserting violations of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce." *See* **Exhibit B**.

11

40.    The complaint in the FTC Suit detailed much of the exact same misleading, deceptive, and confusing conduct, including, but not limited to, manipulation of search engine results, use of the trademarks, service marks, brands, and images of hotels and motels to impersonate such hotels and motels and/or suggest an affiliation therewith, and provision of materially false information to consumers.

41.    The FTC Suit resulted in entry of a stipulated order for permanent injunction against Defendant TravelPASS, enjoining it from, for instance:

a.    "Making any misrepresentation, including through the use of any name, logo, photograph, or otherwise, that consumers who book a hotel room through any website or call center owned, operated, managed, or controlled by [TravelPASS is] booking a hotel room directly through the hotel itself or an entity acting directly for the hotel;

b.    "Making any misrepresentation, including through the use of any name, logo, photograph, or otherwise, that [TravelPASS is], or [is] working directly for, an advertised hotel;"

c.    "[F]ailing to disclose, clearly and conspicuously, and prior to the time any consumer is requested to provide credit card or other payment information: [t]hat callers to any hotel reservation call center owned, managed, operated, or controlled by [TravelPASS] have reached an independent, third-party travel agency;" and

d.    "[F]rom misrepresenting: [a]ny material aspect of the nature or central characteristics of the good or service."

*See* **Exhibit B**.

42.     Defendant has failed to abide by the terms of this permanent injunction and has resumed extensive misleading, deceptive, and confusing use of the trademarks, service marks, brands, and images of hotels and motels, including Drury's DRURY® trademarks, service marks, brands, and images, and provision of materially false information.

### Defendant's Infringement of the DRURY® Marks

43.     The Infringing Websites, upon information and belief, include one or more dedicated webpages for each hotel and motel property Defendant advertises room bookings for, including, for all DRURY® brand properties and/or a substantial number thereof.

44.     The webpages on the Infringing Websites advertising, marketing, promoting, offering for sale, and selling room reservations at DRURY® brand hotels and motels prominently display unauthorized reproductions of Drury's DRURY® Marks and/or confusingly similar variations thereof, as well as unauthorized reproductions of copyright protected images taken from Drury's website.

45.     For instance, a screenshot of the ReservationDesk.com webpage for the Drury Inn & Suites St. Louis Union Station is reproduced below, demonstrating Defendant's prominent misleading, deceptive, and confusing use of Drury's DRURY® Marks and protected images taken from Drury's webpage for the property, without authorization, consent, or permission from Drury:

13



available at: https://www.reservationdesk.com/hotel/601af76/drury-inn-and-suites-st-louis-union-station.

46.    Defendant's unauthorized and prominent misleading, deceptive, and confusing use of Drury's DRURY® Marks and/or confusingly similar variations thereof, as well as images taken from Drury's webpage for its properties, improperly misleads, confuses, and deceives consumers into believing that Defendant is somehow affiliated with, associated with, and/or authorized to provide reservations for and to DRURY® brand motels, hotels, and/or related goods and services.

47.    Such confusion and deceit is exacerbated by the failure of Defendant to include any disclaimer or other notification or disclosure on the Infringing Websites that Defendant is an independent OTA and is not affiliated with, sponsored by, or otherwise associated with Drury, its DRURY® Marks, and/or the DRURY® brand motels, hotels, and/or related goods and services.

48.    Further, on information and belief, Defendant's sales representatives at its call centers, when answering calls from consumers, do not disclose to consumers that they are not affiliated with the hotel they are advertising rooms for, nor do they disclose that they represent an independent OTA, which also exacerbates consumer confusion regarding Defendant's affiliation, association, or sponsorship with and/or by Drury.

49.    Contrary to such misrepresentations, not only is Defendant not authorized by Drury to do so, Defendant also, among other things, provides consumers with materially false information regarding Drury's DRURY® brand motel and hotel properties and charges prices and/or surcharges for DRURY® brand motel and hotel properties which far exceed those charged by Drury.

50.    On the right side of the webpage, consumers can enter check-in and check-out dates in order to search for hotel room reservation availability.  The resulting availability, however, upon information and belief, is based on the inventory Defendant has bid on and

15

purchased access to, which is routinely not commensurate with the actual availability of all rooms available for booking at the advertised DRURY® brand hotel.

51.     For instance, as of April 17, 2025, a consumer searching for a single room for two adults from April 25th to April 26th, 2025, using the ReservationDesk.com webpage for the Drury Inn & Suites St. Louis Union Station property would be presented with rates for six room types listed as available for reservation.  However, the same consumer executing the identical search on Drury's website would find that no room reservations are available for that night. Accordingly, Defendant is advertising and selling reservations for rooms that do not exist.  *See* **Exhibit D**.

52.     In addition, as of April 17, 2025, a consumer searching for a single room for two adults from April 25th to April 26th, 2025, using the NiteCrawler.com webpage for the Drury Inn & Suites St. Louis St. Peters property would be presented with a screen noting that no rooms are available for that night.  However, the same consumer executing the identical search on Drury's website would be provided with rates for six different types of rooms, reservations for which are available for that night.  Accordingly, Defendant is also misleadingly advertising Drury properties as sold out where additional inventory exists. *See* **Exhibit E**.

53.     Further, as of April 17, 2025, a consumer searching for a single room for two adults from April 25th to April 26th, 2025, using the ReservationDesk.com webpage for the Drury Plaza Hotel Orlando – Disney Springs Area property, would be presented with room rates which, including all taxes, fees, and other surcharges exacted by Defendant, exceed Drury's rates for the same room by more than $250.00 per night. *See* **Exhibit F**.

16

54.     On information and belief, the same misleading and materially false availability and pricing information is provided to consumers who call one of Defendant's call centers and speak with Defendant's sales representatives.

55.     Defendant's use, advertising, marketing, promotion, offering for sale, and sale of reservations at DRURY® brand hotel properties under and in connection with Drury's DRURY® Marks, including, but not limited to, its provision of false and misleading information regarding the DRURY® motels, hotels, and related goods and services, has caused and is causing actual confusion, deception, and mistake among the relevant public, and is likely to continue to confuse consumers and cause consumers to be deceived and mistaken, as to the source of and/or possible affiliation, connection and/or association of Defendant's services with Drury's and its authorized licensees' identical and/or highly related goods and services.

56.     Indeed, Drury has received multiple customer complaints as a direct result of customers attempting to book DRURY® branded services through Defendant's Infringing Websites.  Guests who receive inaccurate and misleading information from the Infringing Websites and who later discover the discrepancies, on information and belief, blame Drury for the false advertisements. Further, upon information and belief, this phenomenon has not only affected Drury, but also other hotel owners throughout the country.  Moreover, consumer dissatisfaction with TravelPASS's conduct—and that of its comparator websites—is well-documented. *See* **Exhibits A** and **B**.

57.     Upon information and belief, guests who contact Defendant and/or its affiliates attempting to correct any issues and/or discrepancies are provided with deficient and inadequate customer service, further harming Drury's relationships with its customers and causing

17

significant damage to the goodwill and reputation of Drury, its DRURY® Marks, and its DRURY® branded services.

58.     Defendant's hotel and motel booking services offered under Drury's DRURY® Marks are identical to, highly related to, and in direct competition with the services that Drury offers under its DRURY® Marks, which include, without limitation, hotel and motel booking and accommodation services.  Further, both Defendant's and Drury's hotel and motel booking services concern, in pertinent part, bookings at the same DRURY®-branded hotel and motel properties.

59.     Drury's services, as well as Defendant's services, are customarily offered through similar channels of trade, to similar classes of consumers, and under circumstances that are likely to cause confusion between Drury and its DRURY® branded services and business, and Defendant's unauthorized use of the DRURY® Marks in connection with its services and/or its business.

60.     Further, upon information and belief, Defendant markets, promotes, distributes, and sells its infringing hotel and motel booking services, either directly and/or through distribution channels, in the same manner that Drury promotes, sells, and provides its authentic DRURY®-branded hotel and motel booking services.

61.     Defendant is using a name and mark that is identical and/or highly similar to Drury's DRURY® Marks in sight, sound, meaning, and commercial impression.

62.     Drury has encountered multiple instances of actual confusion with Defendant in the marketplace.

63.     Defendant has no association, affiliation, sponsorship, or any other connection with Drury.

18

64.     Defendant has intentionally adopted and brazenly continued use of Drury's DRURY® Marks with full and complete knowledge of Drury's valuable, distinctive, and incontestable rights therein.

65.     Drury has not consented to Defendant's use of, and Defendant is in no way authorized to use, Drury's famous and incontestable DRURY® Marks.

66.     Defendant's unauthorized use of the DRURY® Marks, including on its Infringing Websites and in call center telephone sales, has caused and is continuing to cause ongoing irreparable harm to Drury, the relevant public, and customers and potential customers who have materially relied, and continue to materially rely, upon Defendant's false and misleading representations.

67.     The injuries and damages sustained by Drury have been directly and proximately caused by Defendant's wrongful adoption and use of Drury's valuable and extremely well-known DRURY® Marks and Defendant's intentional, willful, and wrongful advertisement, marketing, promotion, distribution, sale, and offers of sale of hotel and motel bookings in connection with its infringing use of the DRURY® Marks.

68.     Defendant's use of Drury's DRURY® Marks and/or confusingly similar variations thereof has caused, is causing, and is likely to continue to cause consumers and/or the relevant public to be confused into believing that Drury (a) is, itself, offering the services and/or goods being advertised, marketed, promoted, offered, and provided by Defendant; (b) is affiliated, connected, or otherwise associated with Defendant and/or Defendant's advertising, marketing, promotion, offer, and/or provision of services and/or goods; (c) is sponsoring, endorsing, administering, or otherwise supervising Defendant and/or Defendant's advertising, marketing, promotion, offer, and/or provision of services and/or goods; and/or vice-versa.

19

69.     Upon information and belief, Defendant will continue to use, cause confusion, and wrongfully benefit and gain from its infringing use of Drury's DRURY® Marks and/or confusingly similar variations thereof, unless enjoined by this Court.

**Defendant TravelPASS's Past Infringement of the DRURY® Marks**

70.     In mid-2019, it came to Drury's attention that Defendant had begun using unauthorized reproductions of the DRURY® Marks on various of its websites, including www.reservationdesk.com and www.reservationcounter.com, in connection with advertising, marketing, promoting, offering for sale, and selling reservations at DRURY® brand hotel properties, and was using false and misleading information regarding such reservations and properties, to do so.

71.     Shortly after discovering Defendant's use of unauthorized reproductions and false and misleading information, Drury began receiving reports of actual confusion among the relevant public regarding the source of and affiliation, connection, and/or association, of Defendant's services with Drury's and its authorized licensees' goods and services.

72.     In a good faith effort to resolve the confusion and dispute between the parties caused by Defendant's unlawful conduct, Drury sent a letter to Defendant's website registrar, dated July 3, 2019, making the registrar aware of the violations and requesting that action be taken to immediately cease and desist the willful infringement of the DRURY® Marks and the false and misleading advertising.

73.     After not receiving a response, Drury followed up with Defendant directly in a letter dated September 19, 2019, demanding that action be taken to immediately cease and desist the willful infringement of the DRURY® Marks and the false and misleading advertising.

74.     On December 4, 2019, still having received no response from Defendant and no indication that Defendant was taking any action to stop its infringing conduct, Plaintiff HSC filed a lawsuit in this federal district, asserting claims of trademark infringement, false designation of origin and unfair competition, and trademark dilution, under federal, state, and common law.

75.     The 2019 lawsuit was settled on January 4, 2021 by written agreement (the "2021 Settlement Agreement"), in which Defendant agreed to make numerous changes to the advertising, promotion, and sale of room reservations at DRURY® brand properties to cease using false and misleading information with respect thereto. *See* **Exhibit G**.

76.     Despite Defendants' agreement, in mid-2024, Drury discovered that Defendant had resumed extensive, unauthorized use of Drury's DRURY® brands, trademarks, and service marks, including without limitation in connection with the provision of false and misleading information regarding DRURY® brand room reservations and properties, in support of Defendant's advertising, promoting, offering for sale, and selling such room reservations.

77.     At that time, the false and misleading information included, at least: (i) Defendant imposing fees in excess of those charged by Drury without clearly identifying those fees as attributable to, imposed by, and/or charged by Defendant; (ii) Defendant not including any indication or notation that the fees it charged exceeded the fees charged by Drury; and (iii) Defendant failing to identify which proportion of such marked up fees were attributable to and/or charged by Drury (as opposed to Defendant) – all of which information was required by the 2021 Settlement Agreement.

78.     In an effort to avoid litigation and resolve the dispute amicably, Drury sent Defendant a letter, dated July 25, 2024, demanding that Defendant immediately cure its breaches of the 2021 Settlement Agreement.

21

79.     In e-mail correspondence dated August 16, 2024, counsel for Defendant represented that Defendant intended to address all of the identified issues, but that it had run into technical issues that Defendant did not foresee.  In e-mail correspondence dated August 22, 2024, counsel for Defendant represented that the changes to the Infringing Websites went live that morning, asking counsel for Drury to confirm.

80.     On August 26, 2024, counsel for Drury responded to counsel for Defendant, noting there remained numerous violations on the Infringing Websites, including a complete failure to make any changes to the www.nitecrawler.com website, and reiterating Drury's demand for compliance with the 2021 Settlement Agreement.

81.     Drury did not receive any further correspondence from Defendant or counsel for Defendant.

82.     On information and belief, no further actions or steps were taken by Defendant to comply with the 2021 Settlement Agreement and cease its blatant provision of materially false and deceptive information regarding Drury, its business, its DRURY® brand, trademarks, and service marks, and its goods and services offered under the DRURY® brand.

83.     Instead, as Drury came to find out, Defendant redoubled its widespread use and dissemination of false and misleading information on its Infringing Websites and in its call center telephone sales programs.

84.     Over the course of the months following Defendant's failure to make further changes to cure its breaches of the 2021 Settlement Agreement and false advertising, Drury continued to learn of instances of false advertisement on the Infringing Websites and in telephone sales calls, including, without limitation, associated with room availability (*i.e.*, advertising rooms as "sold out" where availability remained and vice-versa) and pricing (*i.e.*,

22

advertising rooms at rates far exceeding what Drury charged for the same rooms); misleading and unauthorized use of its DRURY® brand in connection therewith; and resulting rampant confusion in the marketplace, including but not limited to from disgruntled customers who had been fooled by Defendant's deceptions into purchasing DRURY® rooms at extremely marked up rates, believing they were purchasing the rooms directly from Drury.

85.    As a result of the rising tide of reports of confusion and frustration from customers and clear lack of action by Defendant to curb the same, Drury again wrote to Defendant, in a letter dated January 27, 2025, noting Defendant's lack of response to Drury's correspondence, lack of action taken to regain compliance with the 2021 Settlement Agreement, and escalation in use of materially false and misleading information surrounding room reservation availability and price.

86.    In that letter, among other things, Drury demanded that Defendant cease any and all use of the DRURY® Marks on the Infringing Websites and any other websites owned or controlled by Defendant, as well as through any and all telephone sales and/or other sales channels, including, but not limited to, in connection with the advertisement, offer for sale, or sale of any reservations at DRURY® brand properties.  Defendant refused.

87.    Defendant's continued unauthorized use of the DRURY® Marks is deliberate, willful, malicious, and in reckless disregard of Drury's rights therein and thereto.  Further, such continued use is in bad faith, with a clear intent to profit from Drury's reputation and goodwill in the DRURY® Marks and to cause confusion, mistake, and deception.

88.    As a result of Defendant's wrongful acts, Drury has suffered, and will continue to suffer, irreparable injury in the form of lost goodwill, lost revenue, and injury to its reputation. No monetary remedy alone can adequately compensate Drury for the harm Defendant's wrongful

acts have caused Drury's marks, reputation, and goodwill, and for the harm that Drury will suffer if Defendant is not enjoined from continuing its wrongful acts.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**UNDER SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

89.　Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 88 of the Complaint as if fully set forth and restated herein.

90.　Drury is the owner of all right, title, and interest in, to, and under its distinctive DRURY® Marks, as well as all goodwill therein.

91.　Drury began using and acquiring rights in, to, and under, its valuable, extremely well-known, and famous DRURY® Marks long prior to Defendant's adoption and first use of Drury's DRURY® Marks and/or confusingly similar variations thereof.

92.　Drury is the senior user of its DRURY® Marks for, at least, motel and hotel bookings and accommodations, and related goods and services, throughout the United States.

93.　Defendant's unlicensed, un-consented to, and otherwise unauthorized use of Drury's DRURY® Marks and/or confusingly similar variations thereof, on or in connection with its actual or intended advertising, marketing, promotion, offer, and/or sale of its identical and highly related hotel and motel booking services, including at DRURY® brand hotels, has caused, will cause, and/or is likely to cause the trade, consumers, and the relevant purchasing public to be confused and mistaken as to the source or origin of the services being offered and sold by Defendant and, further, to deceive the trade, customers, and the relevant purchasing public as to whether Drury is affiliated with, connected with, associated with, and/or a sponsor of Defendant's use of Drury's distinctive, famous, and valuable DRURY® Marks on or in connection with such identical and highly related services.

94.     Defendant has engaged in the activity described above with the intent to confuse and deceive the public into believing that Defendant and its hotel and motel booking services, including for DRURY® brand properties originate from, are affiliated with, or are sanctioned, endorsed, approved, or authorized by Drury and/or its use of its DRURY® Marks.

95.     Defendant initially and/or subsequently, acted willfully and intentionally in using Drury's DRURY® Marks and/or confusingly similar variations thereof to cause confusion and deception as to whether Defendant and/or its hotel and motel booking services, including for DRURY® brand properties, are affiliated with, or are sanctioned, endorsed, approved, or authorized by Drury.  The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

96.     By virtue of Defendant's acts hereinabove described, Defendant has committed and is continuing to commit acts of federal trademark infringement in violation of, *inter alia*, Section 32 of the Lanham Act, 15 U.S.C. § 1114.

97.     Defendant's aforesaid acts of trademark infringement have caused and will continue to cause damage and irreparable harm to Drury, and are likely to continue unabated, thereby causing further damage and irreparable harm to Drury and to the valuable goodwill symbolized by and associated with its distinctive and extremely well-known and famous DRURY® Marks, unless enjoined and restrained by the Court.

98.     Drury has no adequate remedy at law and has and will continue to suffer irreparable injury if Defendant is allowed to continue to wrongfully use Drury's DRURY® Marks and/or any confusingly similar variations thereof.

**COUNT II**
**FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**
**UNDER SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

99.     Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 98 of the Complaint as if fully set forth and restated herein.

100.     Drury is the owner of all right, title, and interest in, to, and under its distinctive DRURY® Marks, as well as all goodwill therein.

101.     Drury began using and acquiring rights in, to, and under, its valuable, extremely well-known, and famous DRURY® Marks long prior to Defendant's adoption and first use of Drury's DRURY® Marks and/or confusingly similar variations thereof.

102.     Drury is the senior user of its DRURY® Marks for, at least, motel and hotel bookings and accommodations, and related goods and services, throughout the United States.

103.     Defendant's unlicensed, un-consented to, and otherwise unauthorized use of Drury's DRURY® Marks and/or confusingly similar variations thereof, on or in connection with its advertising, marketing, promotion, offer, and/or sale of its identical and highly related hotel and motel booking services, including for DRURY® brand properties, constitutes a false designation of origin that wrongly suggests to the relevant purchasing public and consumers that such services emanate from, or are licensed, endorsed, approved, or sponsored by, or are in some other way associated or connected with Drury and/or its DRURY® Marks.

104.     Defendant's unlicensed, un-consented to, and otherwise unauthorized use of Drury's DRURY® Marks and/or confusingly similar variations thereof, on or in connection with its actual or intended advertising, marketing, promotion, offer, and/or sale of its identical and/or highly related hotel and motel booking services, including for DRURY® brand properties,

constitutes a false description or representation tending to suggest to the relevant purchasing public that Drury is the source of origin of such services.

105. By virtue of Defendant's acts hereinabove described, Defendant has committed and is continuing to commit acts of unfair competition and false designation of origin in violation of, *inter alia*, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

106. Defendant's aforesaid acts of unfair competition and false designation of origin have caused and will continue to cause damage and irreparable harm to Drury, and are likely to continue unabated, thereby causing further damage and irreparable harm to Drury and to the valuable goodwill symbolized by and associated with its distinctive and extremely well-known and famous DRURY® Marks, unless enjoined and restrained by the Court.

107. Drury has no adequate remedy at law and will suffer irreparable injury if Defendant is allowed to continue to wrongfully use Drury's DRURY® Marks and/or any confusingly similar variations thereof.

**COUNT III**
**FEDERAL TRADEMARK DILUTION**
**UNDER SECTION 43(c) OF THE LANHAM ACT (15 U.S.C. § 1125(c))**

108. Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 107 of the Complaint as if fully set forth and restated herein.

109. Drury is the owner of all right, title, and interest in, to, and under its distinctive DRURY® Marks, as well as all goodwill therein.

110. The DRURY® Marks are distinctive and famous in the United States in the hotel and motel industries, including, but not limited to, the industry of hotel and motel bookings agencies and providers, and among relevant customers and consumers.

111. Defendant has and is actually using trademarks on or in connection with its identical, highly related, and/or otherwise directly competing hotel and motel booking services, including for DRURY® brand properties, which marks are identical to, substantially indistinguishable from, and/or confusingly similar to, one or more of the DRURY® Marks, after one or more of the DRURY® Marks became famous, to wit, long prior to Defendant's incorporation in, upon information and belief, 2006, let alone when Defendant, upon information and belief, began its unauthorized use of the DRURY® Marks more than a decade later.

112. Upon information and belief, Defendant has acted and continues to act with knowledge of the fame and reputation of the DRURY® Marks with the purpose of usurping such rights and to wilfully and intentionally confuse, mislead, and deceive members of the public.

113. Defendant's actions have and are likely to dilute, blur, and tarnish the distinctive quality of the DRURY® Marks, and to lessen the capacity of those marks to identify and distinguish Drury's well-known and highly regarded hotel and motel accommodations and related booking services.

114. By virtue of Defendant's acts hereinabove described, Defendant has committed and is continuing to commit acts of trademark dilution in violation of, *inter alia*, 15 U.S.C. § 1125(c).

115. The aforesaid acts of trademark dilution have caused and will continue to cause damage and irreparable harm to Drury and are likely to continue unabated, causing further damage and irreparable harm to Drury and the goodwill symbolized by and associated with its DRURY® Marks, unless enjoined and restrained by this Court.

28

116.    Drury has no adequate remedy at law and will suffer irreparable injury if Defendant is allowed to continue to wrongfully dilute, blur, and tarnish the distinctive quality of the DRURY® Marks.

117.    Because Defendant acted wilfully and intentionally to trade on Drury's reputation and cause dilution of their famous DRURY® Marks, Drury is entitled to injunctive relief, damages, extraordinary damages, fees, and costs pursuant to 15 U.S.C. § 1125(c)(2).

## COUNT IV
## FEDERAL FALSE ADVERTISING
## UNDER SECTION 43(a)(1)(B) OF THE LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))

118.    Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 117 of the Complaint as if fully set forth and restated herein.

119.    Drury is the owner of all right, title, and interest in, to, and under its distinctive DRURY® Marks, as well as all goodwill therein.

120.    Defendant has used, is using, and upon information and belief, intends to continue to use Drury's DRURY® Marks in connection with making false and misleading statements of fact in commercial advertisements on the Infringing Websites and/or call center telephone sales programs regarding Drury's DRURY® hotel and motel accommodations and associated booking services.

121.    For example, Defendant has used, is using, and, upon information and belief, intends to continue to use Drury's DRURY® Marks in connection with, *inter alia*, (i) making materially and unambiguously false representations regarding the availability of room reservations and accommodations at various DRURY® hotel and motel properties, *i.e.*, falsely advertising various DRURY® hotel and motel properties as sold out or otherwise lacking room inventory, when additional room inventory remains, and/or vice versa; and (ii) making materially

and unambiguously false representations regarding the prices, fees, surcharges, and/or taxes associated with various room reservations at DRURY® hotel and motel properties, *i.e.*, advertising prices that include hidden fees, surcharges, markups and/or taxes that far exceed the amount charged by Drury for the identical room reservations, without indicating in any way that Defendant has altered and is responsible for the excessive overall prices.

122.    By disseminating this materially and unambiguously false and misleading information both via the Infringing Websites and via call center telephone sales programs, in direct connection with Defendant's misleading and deceiving use of Drury's DRURY® Marks, the materially false and misleading statements have deceived, are deceiving, will continue to deceive, and/or have the capacity to deceive a substantial segment of potential consumers, including, without limitation, into believing that such mispresented availability and/or pricing information is accurate and/or that Drury is the source of such misrepresentations or such misrepresented availability and/or price information.

123.    The materially and unambiguously false and misleading statements are likely to influence a consumer's purchasing decisions as the statements, which misrepresent *inter alia* availability and pricing of the hotel and motel accommodations and related booking services, bear directly on the nature, qualities, and characteristics of such services.

124.    Consumers who encounter the materially and unambiguously false and misleading statements, upon information and belief, have relied on and been actually deceived by those statements and/or are likely to rely on and be deceived by those statements, and, *inter alia* (i) not purchase room reservations at DRURY® hotel and motel properties (where, for instance, consumers rely on misrepresentations regarding availability or decide not to pay the excessively inflated prices); and/or (ii) initially pay the inflated price and thereafter complain to

Drury about the discrepancy between the price they paid and the price advertised by Drury and/or seek to cancel and refund their purchase.

125.   Further, it appears that it is Defendant's express intent to deceive consumers regarding the misrepresented availability and pricing information to obtain sales at price points that it would otherwise be unlikely to and/or to divert sales from Drury – indeed, there is no other logical explanation for Defendant's conduct.

126.   By virtue of Defendant's acts hereinabove described, Defendant has committed and is continuing to commit acts of false advertisement in violation of, *inter alia*, Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

127.   Defendant's aforesaid acts of false advertisement have caused and will continue to cause damage and irreparable harm to Drury, and are likely to continue unabated, thereby causing further damage and irreparable harm to Drury and to the valuable goodwill symbolized by and associated with its distinctive and extremely well-known and famous DRURY® Marks, unless enjoined and restrained by the Court.

128.   Drury has no adequate remedy at law and will suffer irreparable injury if Defendant is allowed to continue to wrongfully use Drury's DRURY® Marks and/or any confusingly similar variations thereof in connection with its false advertisements and related unlawful conduct.

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT**
**<u>UNDER MISSOURI LAW</u>**

129.   Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 128 of the Complaint as if fully set forth and restated herein.

31

130.    Drury is the owner of all right, title, and interest in, to, and under its distinctive DRURY® Marks, as well as all goodwill therein.

131.    Drury began using and acquiring rights in, to, and under, its valuable, extremely well-known, and famous DRURY® Marks long prior to Defendant's adoption and first use of Drury's DRURY® Marks and/or confusingly similar variations thereof.

132.    Drury is the senior user of its DRURY® Marks for, at least, motel and hotel bookings and accommodations, and related goods and services, throughout the United States.

133.    Defendant's unlicensed, un-consented to, and otherwise unauthorized use of Drury's DRURY® Marks and/or confusingly similar variations thereof, on or in connection with its actual or intended advertising, marketing, promotion, offer, and/or sale of its identical and highly related hotel and motel booking services, including at DRURY® brand hotels, has caused, will cause, and/or is likely to cause the trade, consumers, and the relevant purchasing public to be confused and mistaken as to the source of origin of the services being offered and sold by Defendant and, further, to deceive the trade, customers, and the relevant purchasing public as to whether Drury is affiliated with, connected with, associated with, and/or a sponsor of Defendant's use of Drury's distinctive, famous, and valuable DRURY® Marks on or in connection with such identical and highly related services.

134.    Defendant has engaged in the activity described above with the intent to confuse and deceive the public into believing that Defendant and its hotel and motel booking services, including for DRURY® brand properties originate from, are affiliated with, or are sanctioned, endorsed, approved, or authorized by Drury and/or its use of its DRURY® Marks.

135.    Defendant initially and/or subsequently, acted willfully and intentionally in using Drury's DRURY® Marks and/or confusingly similar variations thereof to cause confusion and

32

deception as to whether Defendant and/or its hotel and motel booking services, including for DRURY® brand properties, are affiliated with, or are sanctioned, endorsed, approved, or authorized by Drury.

136.    By virtue of Defendant's acts hereinabove described, Defendant has committed and is continuing to commit acts of common law trademark infringement in violation of Missouri common law.

137.    Defendant's aforesaid acts of trademark infringement have caused and will continue to cause damage and irreparable harm to Drury, and are likely to continue unabated, thereby causing further damage and irreparable harm to Drury and to the valuable goodwill symbolized by and associated with its distinctive and extremely well-known and famous DRURY® Marks, unless enjoined and restrained by the Court.

138.    Drury has no adequate remedy at law and has and will continue to suffer irreparable injury if Defendant is allowed to continue to wrongfully use Drury's DRURY® Marks and/or any confusingly similar variations thereof.

## COUNT VI
## STATUTORY AND COMMON LAW TRADEMARK DILUTION
## UNDER MISSOURI LAW (MO. REV. STAT. §417.061(1))

139.    Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 138 of the Complaint as if fully set forth and restated herein.

140.    Drury is the owner of all right, title, and interest in, to, and under its distinctive DRURY® Marks, as well as all goodwill therein.

141.    Drury's famous and incontestable DRURY® Marks are distinctive marks within the meaning of Chapter 417 of the Missouri Revised Statutes and have been famous and distinctive marks prior to Defendant's adoption and conduct as alleged herein.

142.    Without license, consent, or other authorization, Defendant has used, is currently using, and, upon information and belief, intends to continue using Drury's DRURY® Marks on or in connection with its directly competing and/or highly related sale of hotel and motel booking services, including for DRURY® brand properties, after the DRURY® Marks became distinctive, *to wit*, long prior to Defendant's adoption and conduct as alleged herein.

143.    On information and belief, Defendant acted with knowledge of the distinctiveness and reputation of Drury's DRURY® Marks, with the purpose of usurping such rights, and to wilfully and intentionally confuse, mislead, and/or deceive members of the public.

144.    Defendant's actions have and are likely to continue to dilute, blur, and tarnish the distinctive quality of Drury's DRURY® Marks, and/or have and are likely to continue to cause injury to Drury's business reputation.

145.    By virtue of Defendant's acts described above, Defendant has committed and is continuing to commit acts of trademark dilution in violation of, *inter alia*, MO. REV. STAT. §417.061(1) and Missouri common law.

146.    The aforesaid acts of trademark dilution have caused, are causing, and/or will continue to cause damage and irreparable harm to Drury and are likely to continue unabated, causing further damage and irreparable harm to Drury and the goodwill symbolized by and associated with Drury's DRURY® Marks, unless enjoined and restrained by this Court.

147.    Drury has no adequate remedy at law and will suffer irreparable injury if Defendant is allowed to continue to wrongfully dilute, blur, and tarnish the distinctive quality of Drury's DRURY® Marks and/or cause injury to Drury's business reputation.

148.    Because Defendant acted wilfully and intentionally to trade on Drury's reputation and cause dilution of their distinctive DRURY® Marks, Drury is entitled to injunctive relief pursuant to MO. REV. STAT. §417.061(1).

## COUNT VII
## COMMON LAW UNFAIR COMPETITION
## UNDER MISSOURI LAW

149.    Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 148 of the Complaint as if fully set forth and restated herein.

150.    As a result of Drury's and its authorized licensees' extensive use and investments in providing, marketing, promoting, advertising, and developing Drury's DRURY® Marks on and in connection with its services, Drury has acquired and built-up a substantial amount of valuable goodwill in and to its DRURY® Marks. As such, Drury's DRURY® Marks have become associated with, in the minds of the relevant public, consumers, and the trade, Drury's goods and services, and has come to symbolize Drury's reputation for quality and excellence.

151.    Without license, consent, or other authorization, Defendant adopted, used, and continues to use Drury's DRURY® Marks and/or confusingly similar variations thereof in connection with marketing, advertising, promoting, and selling directly competing and/or highly related hotel and motel booking services, including for DRURY® brand properties.

152.    Defendant's unlicensed, unconsented to, and otherwise unauthorized use of Drury's DRURY® Marks and/or confusingly similar variations thereof, on or in connection with Defendant's goods, services, or commercial activities, uses and/or employs deception, fraud, false pretense, misrepresentation, and/or unfair practices regarding and/or conceals or omits material facts about (i) Defendant's affiliation, connection, or association with Drury and/or Drury's DRURY® Marks, and/or the services Drury offers and provides under its DRURY® Marks; and (ii) the origin, sponsorship, or approval of Defendant's goods, services, or

35

commercial activities by Drury, and/or as to the origin, sponsorship, or approval of Drury's services or commercial activities by Defendant.

153. Defendant's acts complained of herein constitute unlawful, unfair and/or fraudulent business methods and/or practices in violation of Missouri common law.

154. Defendant's unlawful, unfair, and/or fraudulent business methods and/or practices described above were knowing and wilful, and Drury has been actually damaged thereby, entitling Drury to recover actual damages, as well as, at the Court's discretion, punitive damages, injunctive relief, and equitable relief, pursuant to Missouri common law.

**COUNT VIII**
**BREACH OF CONTRACT**
**UNDER MISSOURI COMMON LAW**

155. Drury realleges and incorporates each and every allegation set forth in paragraphs 1 through 154 of the Complaint as if fully set forth and restated herein.

156. On January 4, 2021, Drury and Defendant entered into the 2021 Settlement Agreement, *see* **Exhibit G**, pursuant to which Defendant agreed to make a number of changes to its Infringing Websites to, among other items, ensure its prices, taxes, fees, and other surcharges include accurate attributions so customers know whether such prices, taxes, fees, and other surcharges are attributable to Drury or to Defendant.

157. Plaintiff has substantially complied with its obligations under the 2021 Settlement Agreement.

158. In mid-2024, it came to Drury's attention that Defendant had resumed extensive, unauthorized use of Drury's DRURY® brands, trademarks, and service marks, including without limitation in connection with the provision of false and misleading information in violation of the 2021 Settlement Agreement.

159.    More specifically, at that time, the false and misleading information included: (i) Defendant imposing fees in excess of those charged by Drury without clearly identifying those fees as attributable to, imposed by, and/or charged by Defendant; (ii) Defendant not including any indication or notation that the fees it charged exceeded the fees charged by Drury; and (iii) Defendant failing to identify which proportion of such marked up fees were attributable to and/or charged by Drury (as opposed to Defendant) – all of which information was required by Section 1 of the 2021 Settlement Agreement.

160.    Pursuant to Section 1 of the 2021 Settlement Agreement, Defendant agreed that it would cure any violations of Section 1 within thirty (30) days of receiving written notice from Drury.

161.    Drury sent Defendant written notice of its breach in a letter, dated July 25, 2024.

162.    In e-mail correspondence dated August 22, 2024, counsel for Defendant represented that the changes to the Infringing Websites went live that morning, asking counsel for Drury to confirm.

163.    On August 26, 2024, counsel for Drury responded to counsel for Defendant, noting there remained numerous violations on the Infringing Websites, including a complete failure to make any changes to the www.nitecrawler.com website, and reiterating Drury's demand for compliance with the 2021 Settlement Agreement.

164.    Defendant did not respond to that correspondence, nor, upon information and belief, did it take any additional steps to regain compliance.  Rather, as Drury came to find out, Defendant redoubled its widespread use and dissemination of false and misleading information on its Infringing Websites and in its call center telephone sales programs.

37

165.    For instance, Drury continued to learn of instances of false advertisement on the Infringing Websites and in telephone sales calls, including, without limitation, associated with room availability (*i.e.*, advertising rooms as "sold out" where availability remained and vice-versa) and pricing (*i.e.*, advertising rooms at rates far exceeding what Drury charged for the same rooms without identifying Defendant – and not Drury – as the source of those excessive charges).

166.    Drury again wrote to Defendant, in a letter dated January 27, 2025, noting Defendant's lack of response to Drury's correspondence, lack of action taken to regain compliance with the 2021 Settlement Agreement, and escalation in use of materially false and misleading information surrounding room reservation availability and price.

167.    In that letter, among other things, Drury demanded that Defendant cease any and all use of the DRURY® Marks on the Infringing Websites and any other websites owned or controlled by Defendant, as well as through any and all telephone sales and/or other sales channels.  Defendant refused.

168.    Defendant, to date, has, upon information and belief, still not made the changes necessary to its Infringing Websites to regain compliance with the 2021 Settlement Agreement.

169.    Per the terms of the Section 1, Defendant materially breached the 2021 Settlement Agreement by failing to redress the identified violations and regain compliance with the 2021 Settlement Agreement (i) by or before August 24, 2024 (*i.e.*, thirty days after the July 25, 2024 Notice of Breach); (ii) by or before September 25, 2024 (*i.e.*, thirty days after counsel for Drury confirmed the continuing breach of the 2021 Settlement Agreement in correspondence dated August 26, 2024); and/or (iii) by or before February 26, 2025 (*i.e.*, thirty days after the January

27, 2025 letter reiterating the continuing and expanding breaches of the 2021 Settlement Agreement).

170.    Further, Defendant's knowing and repeated failure to redress the identified violations, including without limitation related to its fraudulent and deliberately false advertising, and, instead, extensive expansion upon such violations, despite repeated notices from Drury, makes Defendant's material breach of the 2021 Settlement Agreement willful and intentional.

171.    Defendant's ongoing and expanding material breach of the 2021 Settlement Agreement has caused, is causing, and, upon information and belief, will continue to cause significant and irreparable damage to Drury and its business, including without limitation in the form of (i) lost profits and revenue from missed sales and missed opportunities for sales; and (ii) injury to its goodwill and reputation, including as represented by the DRURY® Marks, in an amount to be proven at trial.

## Prayer for Relief

**WHEREFORE**, Plaintiffs Hotel Services Company and Drury Hotels Company request that the Court enter judgment against Defendant, as follows:

a.    A permanent injunction enjoining Defendant, as well as its officers, shareholders, agents, servants, employees, attorneys, successors and assigns, affiliates, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, and those in privity with Defendant, as well as those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from using the DRURY® Marks and/or any confusingly similar variations thereof, in any manner or form, or any other reproduction, counterfeit, copy, or colorable imitation of such mark, either alone or in combination with any other designation, on or in connection with any manufacturing, marketing, advertising, promoting, distributing, offering for sale, providing, or selling of Defendant's goods

and services, including without limitation, hotel and motel booking services; from otherwise infringing and/or diluting the distinctive nature of Drury's DRURY® Marks; from otherwise falsely advertising the nature, qualities, or characteristics of Drury's hotel and motel accommodations and/or related booking services; and from otherwise competing unfairly with Drury;

b.    A permanent injunction enjoining Defendant, as well as its officers, shareholders, agents, servants, employees, attorneys, successors and assigns, affiliates, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, and those in privity with Defendant, as well as those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from selling (or purporting to sell) hotel rooms at any Drury property.

c.    An Order directing Defendant to file with this Court and serve on Drury's counsel within 30 calendar days after service of an injunction, a report under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

d.    An Order directing Defendant to (i) send to Drury's counsel and/or destroy and/or obliterate, in accordance with written instructions from Drury, any and all point-of-sale and/or consumer facing materials, labels, signage, boxes, prints, catalogues, branding style guides, line sheets, marketing materials, internet web pages, metatags, search engine optimizations, paid search ads, sponsored ads, packages, papers, press release(s), telephone directories or listings, answering of telephones, business cards, email signature blocks, other trade dress, and any other materials in the possession or control of Defendant, upon which appears or otherwise reflects Drury's DRURY® Marks, and/or any confusingly similar variations thereof, in any manner or form, or any other reproduction, counterfeit, copy, or

40

colorable imitation of Drury's DRURY® Marks, either alone or in combination with any designation; and (ii) disclose the identities of the vendors, manufacturers, distributors, suppliers, and e-commerce partners of Defendant's infringing goods and services bearing or provided in connection with Drury's DRURY® Marks, and/or any confusingly similar variations thereof.

e.     An Order directing Defendant to provide an accounting for Defendant's profits (if any) arising from Defendant's infringement of or upon and dilution of Drury's DRURY® Marks, its false designations of origin, its false advertisements, and its acts of unfair competition;

f.     An Order awarding all costs and attorney's fees to Drury as the prevailing party in this dispute regarding Defendant's violations of (and failure to cure such violations of) the 2021 Settlement Agreement, pursuant to Section 1 thereof;

g.     An Order awarding Drury the damages it actually sustained, including, *inter alia*:

    i.     as a consequence of Defendant's infringement of and upon Drury's DRURY® Marks;

    ii.    as a consequence of Defendant's false designations of origin;

    iii.   as a consequence of Defendant's dilution of the DRURY® Marks;

    iv.    as a consequence of Defendant's false advertisements;

    v.     as a consequence of Defendant's actions of unfair competition; and

    vi.    as a consequence of Defendant's breach of the 2021 Settlement Agreement;

h.     An Order awarding treble the actual damages awarded for use of a counterfeit mark pursuant to 15 U.S.C. § 1117(b). Drury reserves the right to elect, any time before final judgment, statutory damages under 15 U.S.C. § 1117(c) in lieu of actual damages and profits;

41

i.      An Order awarding pre-judgment and post-judgment interest on the above damage awards;

j.      An Order awarding costs and reasonable attorneys' fees and expenses incurred by Drury in connection with this action; and

k.      An Order awarding such other and further relief that this Court may deem just.

Dated:   April 17, 2025                          BRYAN CAVE LEIGHTON PAISNER LLP


By: /s/ *Michael E. Rowan*
David A. Roodman, #38109 (MO)
James P. Emanuel, Jr., #64833 (MO)
Michael E. Rowan, #72992 (MO)
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
David.Roodman@bclplaw.com
Michael.Rowan@bclplaw.com
James.Emanuel@bclplaw.com
BCIPDocketing@bclplaw.com

*Attorneys for Plaintiffs Hotel Services Company, LLC and Drury Hotels Company, LLC*